IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
October 25, 2005 Session

## SHANNON SMITH v. STATE OF TENNESSEE

**Appeal from the Circuit Court for Rutherford County**
**No. M-54954   Don R. Ash, Judge**

**No. M2004-02494-CCA-R3-PC - Filed December 8, 2005**

The Petitioner, Shannon Smith, pled guilty to domestic assault, and he was sentenced to eleven months and twenty-nine days. Subsequently, the Petitioner filed a petition for post-conviction relief, alleging that he received ineffective assistance of counsel. After a hearing, the post-conviction court dismissed the petition, and the Petitioner now appeals. Finding that there exists no reversible error, we affirm the judgment of the post-conviction court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court affirmed**

ROBERT W. WEDEMEYER, J., delivered the opinion of the court, in which THOMAS T. WOODALL and JAMES CURWOOD WITT, JR., JJ., joined.

John D. Drake, Murfreesboro, Tennessee, for the Appellant, Shannon Smith.

Paul G. Summers, Attorney General and Reporter; Benjamin A. Ball, Assistant Attorney General; William C. Whitsell, Jr., District Attorney General; Jennings Jones, Assistant District Attorney General, for the Appellee, State of Tennessee.

### OPINION
### I. Facts

On December 11, 2002, Barbra Gooch, the Petitioner's wife at the time, swore out a warrant against the Petitioner that alleged that she and the Petitioner were in the process of a divorce and she had an active Order of Protection against him. Further, she alleged in the warrant that the Petitioner had committed aggravated assault against her on November 11, 2002, by grabbing her by her face, squeezing her jaw, pushing her down on a car seat, and holding her down.

On February 3, 2003, the Petitioner pled guilty to domestic assault. At the guilty plea hearing, the Petitioner told the trial court that he was not forced or coerced to plead guilty. He agreed that the attorney had done a good job for him, and he had no complaints about her. He said

that she explained the range of punishment to him and also what the State would have to prove in order for him to be found guilty. He agreed that he was entering his plea freely and voluntarily, and he said that he understood that he had the right to plead not guilty and be guaranteed certain constitutional rights, which the trial court listed for him. The Defendant said that he was entering a plea of guilty to the reduced charge of domestic assault because it was in his best interest. Thereafter, the trial court found him guilty of domestic assault and sentenced him to eleven months and twenty-nine days. The trial court ordered that the Petitioner would receive probation after serving thirty-seven days, twenty-one of which he had already served. The trial court further ordered that this sentence run consecutively to any parole the Petitioner was already serving.

On November 11, 2003, the Petitioner filed a petition for post-conviction relief, alleging, among other things, the ineffective assistance of counsel. At a hearing on the petition, the Petitioner's trial counsel ("Trial Counsel") testified that she was a licensed attorney at the time that she represented the Petitioner. She said that she began representing the Petitioner in January of 2003, which was three months after she had become a licensed attorney. She said that she discussed with the Petitioner every aspect of his case, including every avenue available and what would be a "good sentence." She said that they also discussed the pros and cons of the evidence. Trial Counsel said that she went to the jail where the Petitioner was "multiple times," a minimum of five times, and she met with him at the courthouse. Further, she said that the two had multiple phone conversations when the Petitioner's girlfriend told her that the Petitioner wanted to speak with Trial Counsel.

Trial Counsel testified that the Petitioner was charged with aggravated assault with an order of protection in place, and, since the order of protection was a civil matter, she represented him in both civil and criminal court. She said that during the course of her civil representation, she spoke with the domestic violence person and the victim, and the parties agreed to keep the order of protection in place without the Petitioner admitting that he had committed any kind of assault. Trial Counsel testified that the Petitioner believed that the victim, Gooch, had ulterior motives, and Trial Counsel attempted to get Gooch to dismiss the charges. Gooch, however, was unwilling to drop her charges against the Petitioner. Trial Counsel said that the Petitioner told her that Gooch was already married when she married the Petitioner, and Trial Counsel was attempting to investigate this through the Petitioner's girlfriend and uncle. She said that the Petitioner expressed his desire to get this matter over with as soon as possible because he wanted to have his sentence over with by the time he went to his parole revocation hearing. She said that he hoped that his parole would not be violated, and he would be able to get out of jail immediately.

Trial Counsel said that she went over with the Petitioner the facts alleged in the warrant. The Petitioner said that his girlfriend was his alibi for the dates and times that he allegedly assaulted Gooch, but when Trial Counsel asked his girlfriend about this, she said that she could not state that the Petitioner was with her at those times.

Trial Counsel said that she represented the Petitioner at his parole revocation hearing, which was two days after the Petitioner was released from jail on these charges. She said that, at the

hearing, the board determined that the Petitioner violated his parole based upon his charge and because he moved without notifying his parole officer. Trial Counsel said that, prior to the parole revocation hearing, she told the Petitioner that, if he pled guilty, his conviction would be used against him in any future parole proceedings. She also told him that the charge alone could be used as grounds to revoke his parole, but she did not know for certain whether his parole would be revoked.

Trial Counsel said that she discussed a preliminary hearing with the Petitioner. She told him that Gooch would have to testify to provide evidence to have the Petitioner convicted of a felony or a misdemeanor in domestic violence court. Trial Counsel said that, after they discussed the agreement that the State was offering, the Petitioner chose not to have a preliminary hearing and to accept the agreement. According to the agreement, the Petitioner would plead guilty to domestic assault and be sentenced to thirty-seven days, and the Petitioner had already served all but sixteen of those days. She said that the sentence was supposed to run concurrently with his parole so that, if he was not violated, he would not serve more days. Trial Counsel said that she had spoken with the Petitioner's parole officer, and the parole officer said that she was going to support the contention that his parole was not violated. She said that she expected the parole officer to be at the parole revocation hearing, but the officer did not come to the hearing.

Trial Counsel said that, while a preliminary hearing is a good opportunity for a defense lawyer to obtain "unfettered discovery," she understood that the Petitioner wanted this case completed quickly, and he did not want to appear in court again. Accordingly, she informed him of his rights but did not counsel him that he should wait until after the preliminary hearing to plead guilty. Trial Counsel did not remember what statements she had as a part of her file. She remembered that she had some statements from Gooch. She said that the Petitioner told her that Gooch had previously been charged with other crimes, but she did not confirm these charges with the court clerk. She explained that, at that point, there was not trial date set, and it was her intention to do further discovery for trial.

Trial Counsel testified that the Petitioner had full knowledge of his guilty plea because she went over it with him step by step. Further, she said that he understood his constitutional rights and the consequences of pleading guilty. She said that she explained to the Petitioner that, if his parole was violated, he would go back to prison. Trial Counsel also explained to the Petitioner that she would be glad to go to trial. She also said that she discussed defense strategies with the Petitioner, including the alibi strategy, but she said that he could not produce any evidence to support any of these strategies.

On cross-examination, Trial Counsel testified that the Petitioner made the final determination to plead guilty, and he pled guilty of his own free will. She said that she advised him of the effects of pleading guilty, the charge, and his punishment. She went over each of his rights with him, and they discussed all of them, after which the Petitioner signed the bottom of the rights form. Further, the trial judge explained these rights again at the guilty plea hearing, and the Petitioner said he understood his rights and chose to waive them. Trial Counsel said that the Petitioner had previous convictions for drugs and domestic assault, and he was a Range II offender. Trial Counsel said that

she thought that, since the Petitioner wanted to get this case over with as soon as possible, he wanted to plead guilty. Trial Counsel estimated that she spoke with the Defendant on the phone at least fifty times, and she spent approximately fifty hours on this case.

Based upon this evidence, the post-conviction court dismissed the petition, stating that "the [Petitioner] failed to meet the burden of proof . . . ." The Petitioner appealed and filed a motion for remand in this Court, asking for us to order the post-conviction court to make findings of fact. We granted that motion, and on remand the post-conviction court found:

> [The Petitioner] pled guilty and was convicted [of] one count of domestic assault on February 3, 2002. He was sentenced to eleven (11) months twenty-nine (29) days, suspended upon service of thirty-seven (37) days with twenty-one (21) days of jail credit. On November 10, 2003, [the Petitioner] filed a petition for post-conviction relief based on claims of ineffective assistance of counsel, and an involuntary plea.
>
> . . . .
>
> [Trial Counsel] testified that she met with [the Petitioner] numerous times, explored possible alibis, and reviewed his rights and the terms of his plea with him. [The Petitioner] signed the plea agreement reviewed with him by his attorney and acknowledged his willingness to enter into the agreement in court. Because the evidence does not show by clear and convincing proof that neither [Trial Counsel's] performance was deficient nor his plea involuntary given the facts and circumstances surrounding the plea, the Petition is denied and dismissed . . . .

The Petitioner now appeals the dismissal of his petition for post-conviction relief.

## II. Analysis

On appeal, the Petitioner contends that the post-conviction court erred when it dismissed his petition because he received the ineffective assistance of counsel. Specifically, he contends that Trial Counsel was ineffective because she failed to "engag[e] in a preliminary hearing before entering the plea." He asserts that, if there had been a preliminary hearing his guilty plea would have been "'more' voluntary." The Petitioner concedes that he "may not be able to demonstrate that in the absence of a preliminary hearing, [his] case would have ended with a different result," but he is "obliged" to appeal and a preliminary hearing record would have been "most welcome."

The right of a criminally accused to representation is guaranteed by both the Sixth Amendment to the United States Constitution and Article I, section 9, of the Tennessee Constitution. Id.; Baxter v. Rose, 523 S.W.2d 930, 936 (Tenn. 1975). This right to representation includes the right to "reasonably effective" assistance. State v. Burns, 6 S.W.3d 453, 461 (Tenn. 1999). The Tennessee Supreme Court has held that the issue of ineffective assistance of counsel is a mixed question of law and fact and, as such, is subject to a de novo review. Id.

In reviewing a claim of ineffective assistance of counsel, this Court must determine whether the advice given or services rendered by the attorney are within the range of competence demanded of attorneys in criminal cases. Baxter, 523 S.W.2d at 936. To prevail on a claim of ineffective assistance of counsel, a petitioner must show that "counsel's representation fell below an objective standard of reasonableness," Strickland v. Washington, 466 U.S. 668, 688 (1984), and that this performance prejudiced the defense, resulting in a failure to produce a reliable result. Id. at 687; Cooper v. State, 849 S.W.2d 744, 747 (Tenn. 1993). To satisfy the requirement of prejudice, a petitioner must show a reasonable probability that, but for counsel's unreasonable error, the fact finder would have had reasonable doubt regarding the petitioner's guilt. Strickland, 466 U.S. at 695. This reasonable probability must be "sufficient to undermine confidence in the outcome." Id. at 694; see also Harris v. State, 875 S.W.2d 662, 665 (Tenn. 1994).

When evaluating an ineffective assistance of counsel claim, the reviewing court should judge the attorney's performance within the context of the case as a whole, taking into account all relevant circumstances. Strickland, 466 U.S. at 690; State v. Mitchell, 753 S.W.2d 148, 149 (Tenn. Crim. App. 1988). The reviewing court must evaluate the questionable conduct from the attorney's perspective at the time. Strickland, 466 U.S. at 690; Cooper, 849 S.W.2d at 746; Hellard v. State, 629 S.W.2d 4, 9 (Tenn. 1982). In doing so, the reviewing court must be highly deferential and "should indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Burns, 6 S.W.3d at 462. Counsel should not be deemed to have been ineffective merely because a different procedure or strategy might have produced a different result. Williams v. State, 599 S.W.2d 276, 279-80 (Tenn. Crim. App. 1980). The fact that a particular strategy or tactic failed or hurt the defense does not, standing alone, establish unreasonable representation. House v. State, 44 S.W.3d 508, 515 (Tenn. 2001) (citation omitted); Thomas Brandon Booker v. State, No. W2003-00961-CCA-R3-PC, 2004 WL 587644, at *4 (Tenn. Crim. App., at Jackson, Mar. 24, 2004), *perm. app. denied* (Tenn. 2004). However, deference to matters of strategy and tactical choices applies only if the choices are informed ones based upon adequate preparation. House, 44 S.W.3d at 515.

In cases involving a guilty plea or a plea of nolo contendere, the petitioner must show prejudice by demonstrating that, but for counsel's errors, he would not have plead guilty but would have insisted upon going to trial. See Hill v. Lockhart, 474 U.S. 52, 59 (1985); Bankston v. State, 815 S.W.2d 213, 215 (Tenn. Crim. App. 1991).

We conclude that the evidence does not preponderate against the post-conviction court's finding that Trial Counsel did not render the ineffective assistance of counsel. Trial Counsel met with the Petitioner multiple times, and she attempted to develop a defense strategy, but the Petitioner could not produce any evidence to support these strategies. She explained the charges to the Petitioner, his rights, and the consequences of pleading guilty. Under these circumstances, we conclude that the Petitioner has not proven that Trial Counsel's performance fell below an objective standard of reasonableness. Further, the Petitioner concedes that he cannot show how he was prejudiced. Accordingly, we hold that the Petitioner is not entitled to relief on this issue.

## III. Conclusion

In accordance with the foregoing authorities and reasoning, we affirm the post-conviction court's judgment.

_____
ROBERT W. WEDEMEYER, JUDGE